IN THE UNITED STATE DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED /on Roanoke
FEB 21 2013
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATE DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JUAN BARRERA-CABELLO, | ) | CASE NO. 7:10CR00050-1 |
| | ) | (CASE NO. 7:12CV80443) |
| Petitioner, | ) | |
| | ) | REPORT AND RECOMENDATION |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | By: B. WAUGH CRIGLER |
| Respondent. | ) | U.S. MAGISTRATE JUDGE |

On June 1, 2012, Juan Barrera-Cabello ("petitioner") filed a petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("petition"). The United States moved to dismiss, and on November 5, 2012, the case was referred to the undersigned under the authority of 28 U.S.C. § 636(b)(1)(B), to conduct an evidentiary hearing and render to the presiding District Judge a report setting forth findings, conclusions, and recommendations for the disposition of petitioner's claims. For the reasons that follow, the undersigned will RECOMMEND that the presiding District Judge DENY petitioner's claim of ineffective assistance of counsel for the alleged failure to file a direct appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 15, 2010, the government used a confidential informant to purchase one pound of methamphetamine from the petitioner in a recorded controlled purchase. (Dkt. No. 127-1, at 31.) On July 21, 2010, a search warrant was executed on the petitioner's place of business and residence in Carroll County in the Western District of Virginia. *Id.* Petitioner was present at time and was advised of his *Miranda* rights. He agreed to speak to the police and admitted that he was a "pound level source of supply" of methamphetamine. *Id.* He stated that he regularly dealt with several individuals including Donald Vaughn and Timothy Blevins, later a co-

Case 7:10-cr-00050-GEC-BWC   Document 143   Filed 02/21/13   Page 1 of 11   Pageid#: 736

defendant in the case against petitioner. *Id.* at 31-32. The petitioner also stated that his wife had helped him sell methamphetamine and that he was responsible for selling around fourteen (14) kilograms of the drug. *Id.* at 31-32. On August 19, 2010, a grand jury charged the petitioner with two counts of a three count indictment: in Count One, petitioner was charged with, until on or about July 21, 2010, of having knowingly and willfully combined, conspired, confederated, and agreed with persons known and unknown to the grand jury to distribute and possess with intent to distribute more than five hundred (500) grams of a mixture of substance containing methamphetamine, a Schedule II narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(A) and Title 21, United States Code, Section 846; and in Count Two with, on or about July 15, 2010, knowingly and intentionally distributing more than 50 grams of a mixture of substance containing methamphetamine, a Schedule II narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(B). (Dkt. No. 3.)

On January 13, 2011, petitioner pled guilty to Count One of the indictment. (Dkt. Nos. 67, 68, 69.) His sentencing hearing was held on May 24, 2011, and he was sentenced to a term of imprisonment of 168 months, 5 years supervised release after his term of incarceration, a fine of $500, and a mandatory special assessment of $100, among other conditions. (Dkt. Nos. 88, 89; 127-2, at 14-16.) The transcripts reflect that throughout both the guilty plea hearing and the sentencing hearing, petitioner was assisted by an official Spanish interpreter. (Dkt. Nos. 127-1, 127-2.)

On June 1, 2012, petitioner filed a petition under 28 U.S.C. § 2255 claiming, *inter alia*, ineffective assistance of counsel on the part of his attorney Randy Virlin Cargill, an assistant federal public defender. (Dkt. No. 110.) On July 31, 2012, the United States filed a Motion to

2

Dismiss. (Dkt. No. 127.) On November 5, 2012, the presiding District Judge took the motion under advisement and referred all matters relating to petitioner's claim of ineffective assistance of counsel to the undersigned to conduct an evidentiary hearing and to submit to the court a report and recommendation concerning whether counsel was ineffective in failing to file a direct appeal. (Dkt. No. 136.) On January 30, 2013, an evidentiary hearing was held before the undersigned. Petitioner participated by live video while his counsel, a Spanish interpreter, and counsel for the government were present in the courtroom.

**EVIDENCE**

**Petitioner**

In a *pro se* petition printed in his own hand, petitioner alleges that his counsel was ineffective in failing to file a direct appeal. Petitioner alleges, "Randy V. Cargill, Esq. refused to appeal for the fact of a substantial amount of time." (Dkt. No. 110, at 5.) He also asserts, "[Petitioner] maintains that he met his burden of showing that he reasonably demonstrated to counsel that he was interested in appealing…counsel did not meet his duty to consult with the defendant." (Dkt. No. 110-1, at 11.) He further claims, "Now in all circumstances a counsel consults with a client about an appeal under certain circumstances, the assistance of counsel failed in all respects to file an appeal," and "Now Failure (sic) by a criminal attorney to defend a client to assure an appeal when client has requested, such actions results (sic) in a deprivation of the defendants (sic) Sixth Amendment right to effective assistance of counsel irrespective of the likelihood of success on appeal. (Dkt. No. 110-1, at 13-14.)

At the hearing before the undersigned, petitioner testified that he was represented at trial and at sentencing by Cargill. He stated that after sentencing, Cargill told him that his job was over, and he wished the petitioner well. Petitioner stated that he never saw Cargill again and had

3

no further communication with him by phone or letter. Petitioner related that he never attempted to contact or speak with Cargill and never discussed an appeal with Cargill after sentencing. While he also stated that he never received any mail from Cargill, he conceded that he did receive a copy of the sentencing order while in jail, but he believed that it was brought to him by someone at the jail. Petitioner offered that no one asked whether he wanted to appeal his sentencing, but he told the undersigned that he now desires to appeal and wanted an attorney to assist him in filing an appeal.

Petitioner testified that he remembered that at his plea and sentencing proceedings, the presiding District Judge had informed him of his right to contact the court directly if his attorney was unable to assist him. He also testified that he understood he had waived his right to appeal in the terms of his plea agreement, and that Judge Conrad had explained the details of that during the hearing. Petitioner stated that he was surprised by the sentence he received, in that he did not understand that any future reduction of his sentence based on his past or continuing assistance was entirely up to the discretion of the government. Apart from that, however, petitioner acknowledged that he received that for which he had bargained.

Petitioner also testified that he had signed the plea agreement based on his attorney's advice that he could get more time if he went to trial, and on the advice that his sentence could be reduced if he cooperated. He acknowledged that the entire plea agreement was read to him in Spanish at his guilty plea hearing. Petitioner testified that he did not appeal his sentencing immediately because he was waiting for a post-sentence reduction. More importantly, he stated to the undersigned that the reason he is now asking for the right to appeal is that he is unhappy with the fact he did not ultimately receive a post-sentence reduction.

4

Upon further examination, petitioner acknowledged that, at the time of sentencing, he did not know whether he would receive any post-sentence reduction. He testified that his attorney had told him that, within one year of sentencing, he could receive a reduction in his sentence due to the cooperation he had given. Though upset he did not receive any reduction, petitioner stated that he received the precise sentence he had bargained for.

Moreover, petitioner testified that he did not develop any desire to appeal until more than 30 days after he was sentenced. Yet, he asserted that he did not know that he would waive his right to appeal by not exercising it, and that he would have wanted to appeal earlier had he known time was limited. Petitioner also testified that, while the presiding District Judge informed him that he was waiving his right to appeal unless the sentence was invalid or unless there was some other constitutionally impermissible factor, he never was provided an explanation of the meaning of that warning.

He further testified that the District Judge apprised him that the court would help pay the cost of an appeal if he could not afford it, and that he could contact the clerk of court's office for assistance in filing an appeal if he so desired. However, he asserted that he did not know how to either contact an attorney or the clerk's office for assistance.

Finally, petitioner testified in response to questions by the undersigned relating to his petition and its assertions. He stated that another person who could read, write, and understand English drew the petition for him, and that he then "copied" what the individual had written in his own printing, printing his signature at the end.

**Randy Virlin Cargill**

Cargill testified that he is an assistant federal public defender who represented petitioner in the underlying case. Cargill stated that, during the course of his representation, he had no

5

difficulty communicating with the petitioner in English, and that the petitioner was fluent in English. Cargill explained that the two communicated primarily in English, though occasionally both spoke in Spanish. Cargill further testified he had fully explained the plea agreement, including the waiver of his appellate rights, to the petitioner prior to the plea hearing. Cargill also testified that an interpreter was present at all court proceedings, and that the presiding District Judge had the plea agreement read to petitioner in Spanish and explained the plea agreement to him through an interpreter at the hearing, including those provisions dealing with petitioner's appellate rights.

Cargill stated that petitioner never expressed any reservations or confusion about giving up his appellate rights, that petitioner's sentence was consistent with the terms of the plea agreement, and that petitioner expressed no dissatisfaction to him during or after sentencing.[1] Moreover, he testified that petitioner never asked him to note an appeal, adding that, in his professional opinion, there were no meritorious issues for appeal.

Cargill also related that petitioner knew how to contact his office by telephone and by mail. He also stated that the District Judge had explained to petitioner the deadlines for filing an appeal and had informed petitioner that he could contact the clerk of court's office for the court's assistance should he desire to file an appeal. Additionally, he testified that he had sent a letter to petitioner explaining the court's judgment, relating the advice from the judge and providing his advice regarding an appeal and its potential consequences. Cargill did not know whether petitioner received that letter, but the letter never was returned, and petitioner did not contact Cargill in any way after sentencing.

---

[1] Cargill related that there were no unpleasant surprises at sentencing, at least "none that I perceived nor that were expressed to me by [petitioner]."

6

Case 7:10-cr-00050-GEC-BWC   Document 143   Filed 02/21/13   Page 6 of 11   Pageid#: 741

On cross examination by petitioner's counsel, Cargill also testified that he explained to his client what appeal rights he could not waive. Those rights specifically related to whether Cargill had provided ineffective assistance of counsel, whether there had been a "jurisdictional error," and whether his sentence was beyond the maximum allowed by law.

**APPLICABLE LAW**

In order to establish ineffective assistance of counsel, petitioner must demonstrate by the preponderance of the evidence: 1) that counsel's performance was objectively unreasonable when measured against prevailing professional norms, and 2) that the petitioner was prejudiced by the deficient performance in that there is a reasonable probability that the outcome would have been different if not for counsel's deficiency. *See Strickland v. Washington*, 466 U.S. 668, 692-694 (1984); *Frazer v. South Carolina*, 430 F.3d 696, 703 (4th Cir. 2005). There is a strong presumption that a counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. Moreover, counsel's representation need not have been free of error to be found effective. *See Wyatt v. U.S.*, 591 F.2d 260, 267 (4th Cir. 1979). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694.

An attorney who disregards a client's specific instruction to file a timely notice of appeal acts in a professionally unreasonable manner. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). A presumption of prejudice applies when an attorney's deficient performance deprives the defendant of an appeal, such as when his failure to file a timely notice of appeal results in a "forfeiture" of the appellate proceeding. *Id.* at 483. In demonstrating prejudice, a defendant need not show that his hypothetical appeal might have had merit. *Id.* at 486. An attorney is required to file a notice of appeal when the client unequivocally instructs him to do so, even if

7

filing an appeal would be contrary to the plea agreement in the case and/or harmful to the client's interests. *United States v. Poindexter*, 492 F.3d 263, 273 (4th Cir. 2007).

An attorney is under no obligation to file a notice of appeal where the defendant explicitly instructs his attorney not to file one. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). Even when the defendant does not request his attorney to file an appeal, however, there are circumstances where representation may be found ineffective. *Id.* at 477-490; *See also United States v. Cooper*, 617 F.3d 307, 312-314 (4th Cir. 2010). This is so because the Sixth Amendment requires that counsel consult with the defendant regarding a direct appeal by advising his client about the advantages and disadvantages of taking an appeal and by making a reasonable effort to discover the client's wishes. *Flores-Ortega*, 528 U.S. at 478. By the same token, there is no *per se* rule mandating consultation. *Id.* at 481. The duty to consult is constitutionally required when there is reason to think either that: 1) a rational defendant would want to appeal; or 2) the particular defendant reasonably demonstrated to counsel that he was interested in appealing. *Id.* at 480.

In determining whether a rational defendant would have wanted to appeal, the court must consider: 1) whether the defendant's conviction followed a trial or a guilty plea; 2) whether the defendant received the sentenced bargained for as part of the plea; and 3) whether the plea expressly reserved or waived some or all appellate rights. *Flores-Ortega*, 528 U.S. at 480; *Cooper*, 617 F.3d at 313. Counsel is not likely to be found to have been professionally unreasonable for failing to consult with his client about an appeal after a guilty plea where counsel's assistance has established expectations about the consequences of the guilty plea and: 1) those expectations are met; 2) the defendant does not express any interest in appealing; and 3)

8

counsel concludes that there are no non-frivolous grounds for appeal. *Flores-Ortega*, 528 U.S. at 479; *Cooper*, 617 F.3d at 314-315.

**FINDINGS AND CONCLUSIONS**

Petitioner testified that he never instructed his attorney to file a notice of appeal. Moreover, the undersigned does not believe that Cargill was ineffective in failing to consult with his client regarding an appeal for several reasons.[2] First, there was a plea agreement in this case, and there is no question that the agreement was explained in detail to petitioner by Cargill and the presiding District Judge Conrad and read in its entirety to him through the Spanish interpreter who was present at the hearing. Of course, this included the provisions relating to his right to appeal. (Dkt. Nos. 68, at 7; 127-1, at 26-27; 127-2, at 18.) Moreover, petitioner was advised about the means by which he could appeal even if he had no counsel, he was apprised of how he could engage the court's personnel should he wish to appeal, and he was familiar with the means by which he could communicate with assigned counsel should he wish to do so. (Dkt. No. 127-2, at 18-19.)

The undersigned further finds that Cargill thoroughly consulted with his client regarding the terms of the plea agreement and discussed the appellate rights petitioner both retained and waived under the plea agreement. Petitioner admitted that his expectations at the time of his plea and sentencing were met in that he received a sentence at the low end of the sentencing range. In other words, petitioner received the benefit of his bargain with the United States. He further revealed that he never expressed an interest in appealing, nor did he have an interest in appealing

---

[2] The closest Cargill came to consulting with his client after sentencing regarding an appeal was the letter he testified that he sent to petitioner which explaining the court's judgment and including advice from the judge and himself regarding petitioner's appellate rights and whether an appeal would be well advised. Cargill could not say whether this letter reached petitioner, and petitioner testified that he had not received any such letter. Yet, according to Cargill, the letter never was returned undelivered.

9

until sometime after sentencing, and then only when he learned that the government was not moving for any post-sentence reduction. He admitted that he did not entertain any notion of appealing until well after the 30 day period in which he could note an appeal. In fact, he informed the undersigned that the only thing that upset him was that no motion for a sentence reduction ever was made, and that this failure was the primary motivation behind his now seeking to appeal. There is no question in the undersigned's mind that the terms of the plea agreement clearly set forth that such a reduction was at the discretion of the United States and not guaranteed.[3] (Dkt. No. 68, at 4.)

Upon these findings and for these reasons, the undersigned finds:

1) Petitioner did not unequivocally request that counsel file a notice of appeal.

2) Petitioner's counsel was justified in believing that no rational defendant in petitioner's situation would want to appeal, and that this defendant in particular had not reasonably demonstrated an interest in appealing.

3) The petitioner, in fact, did not demonstrate a desire to appeal and became dissatisfied with his sentence only when he learned that no motion for reduction would be filed, which was well after the time for appeal had lapsed.

---

[3] In *United States v. Cooper*, a defendant asserted that his counsel had provided ineffective assistance by failing to consult with him regarding an appeal. The defendant had signed a plea agreement, but he maintained his innocence through the entry of an Alford plea and had not waived his appellate rights in his plea agreement with the government. *United States v. Cooper*, 617 F.3d 307, 313-315 (4th Cir. 2010). The Court of Appeals found that counsel was not ineffective as the defendant had repeatedly expressed a desire to have the proceedings concluded as quickly as possible, received the sentence he bargained for with the government, had his expectations met, and maintained no non-frivolous grounds for appeal. *Id.* Here, petitioner never expressed an interest in appealing within the appeal period, received the benefit of his bargain, maintains no non-frivolous grounds for appeal, waived his appellate rights that could be waived, and admitted that he was guilty of participating in a conspiracy to distribute methamphetamine.

10

Accordingly, the undersigned RECOMMENDS that petitioner's claim of ineffective assistance of counsel under 28 U.S.C. § 2255 for failure to file a direct appeal be DENIED.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(l)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U.S. Magistrate Judge

February 21, 2013
Date

11