CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 1 6 2013

JULIA C. [signature] EY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Action No. 7:10CR00050 |
| | ) | Civil Action No. 7:12CV80443 |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| JUAN BARRERA-CABELLO, | ) | |
| | ) | By: Hon. Glen E. Conrad |
| Defendant. | ) | Chief United States District Judge |

Defendant Juan Barrera-Cabello, a federal inmate proceeding pro se, filed this action as a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The case is presently before the court for review of the government's motion to dismiss, the report and recommendation of United States Magistrate Judge B. Waugh Crigler, and the defendant's objection to the report. For the reasons that follow, the court will overrule the defendant's objection, adopt the magistrate judge's report and recommendation, and grant the government's motion to dismiss.

## Background

On August 19, 2010, Barrera-Cabello, Maria Hernandez-Salazar, and Timothy Ray Blevins were named in a three-count indictment returned by a grand jury in the Western District of Virginia. Count One charged Barrera-Cabello with conspiracy to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and 846. Count Two charged him with distribution of more than 50 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). Randy V. Cargill, Esq. was appointed to represent Barrera-Cabello during the criminal proceedings.

On January 13, 2011, Barrera-Cabello entered a plea of guilty to Count One of the indictment, pursuant to a written plea agreement. By signing the agreement, the defendant certified that he was pleading guilty because he was, in fact, guilty of the offense charged and

not because of any threats or promises; that he had discussed the plea agreement and all other matters pertaining to the indictment with his attorney; and that he was fully satisfied with his attorney and the attorney's advice. (Plea Ag. at 2, 10.) Under the terms of the plea agreement, Barrera-Cabello stipulated that he was responsible for more than five but less than fifteen kilograms of methamphetamine and, thus, subject to a base offense level of 36 under the United States Sentencing Guidelines. (Id. at 3.) He acknowledged that other sections of the Guidelines might apply in his case. (Id. at 4.) Barrera-Cabello agreed not to seek a term of imprisonment outside of the applicable Guidelines range, and the government agreed to recommend a sentence at the low end of the applicable Guidelines range. (Id.) Barrera-Cabello also acknowledged that the government "retain[ed] all of its rights pursuant to Fed. R. Crim. P. 35(b), U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e)," but that it was "under no obligation to make a motion for the reduction of [his] sentence," and that he had "not been promised anything." (Id.) Additionally, Barrera-Cabello agreed to waive his "right of appeal as to any and all issues in this matter," and to "not file a notice of appeal." (Id. at 7.)

During the plea hearing conducted pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the court established that Barrera-Cabello possessed the capacity to make a voluntary, intelligent, and informed plea.[1] (Plea Hearing Tr. at 6-8.) The court also established that the defendant understood the charge to which he was pleading guilty, as well as the purpose of the Rule 11 proceeding. (Id. at 7-10.)

The court instructed the Assistant United States Attorney ("AUSA") to review the salient portions of the plea agreement that Barrera-Cabello had reached with the government. In

---

[1] The defendant was provided with an interpreter at both his Rule 11 hearing and his sentencing hearing.

response, the AUSA outlined several sections of the plea agreement, including the section summarizing the potential penalties that Barrera-Cabello faced upon conviction. (Id. at 8.) The AUSA also explained the elements of the conspiracy offense with which the defendant was charged, and noted that the defendant had stipulated that he should be held responsible for between five and fifteen kilograms of methamphetamine. (Id. at 9.) Additionally, the AUSA noted that the defendant had agreed to "give up [his] right to appeal." (Id.) Upon being asked if the AUSA's summary of the plea agreement was consistent with his own understanding of the agreement, Barrera-Cabello responded in the affirmative. (Id. at 10-11.)

The court then inquired as to whether Barrera-Cabello was voluntarily pleading guilty. In response to questions from the court, the defendant confirmed that no one had made any promises or representations regarding the disposition of the case other than those set forth in the plea agreement; that no one had attempted to coerce, force, or compel him to plead guilty; and that he was pleading guilty because he was, in fact, guilty of the conspiracy offense with which he was charged. (Id. at 11-12.)

The court also discussed the plea agreement's waiver of appellate rights and its provision pertaining to substantial assistance. When asked if he had, in fact, agreed to waive most of his appellate remedies, Barrera-Cabello responded in the affirmative. (Id. at 12.) Barrera-Cabello also confirmed that he understood that he might have the opportunity to earn a substantial assistance motion, but that there was "no guarantee" that such motion would be filed by the government. (Id. at 17.)

The court subsequently reviewed the constitutional rights that Barrera-Cabello would waive if he entered a plea of guilty. Notwithstanding all of the rights that he would waive and

3

the fact that the offense to which he was pleading guilty carried a mandatory term of imprisonment of ten years to life under 21 U.S.C. § 841(b)(1)(A), Barrera-Cabello indicated that he still wished to enter a plea of guilty. (Id. at 28-29.)

The court asked Barrera-Cabello to explain what he had done that made him believe that he was guilty of the conspiracy offense. In response, the defendant indicated that he sold methamphetamine in concert and in cooperation with other people, that he and his supplier discussed the means by which he would distribute the drugs, and that he was responsible for the distribution of between five and fifteen kilograms of methamphetamine. (Id. at 30.)

The court then called upon the government to present any evidence that would support Freeman's plea of guilty. Proceeding by proffer, the AUSA summarized the government's evidence as follows:

> Your honor, the events in this case occurred up through the 21 of July, 2010 in Carroll County, [in] the Western District of Virginia.

> We learned of Mr. Barrera through other folks involved in other cases the court has seen, and based on that, on the 15th of July the government was able to purchase one pound of methamphetamine from him in a controlled purchase, where the informant had been searched before and after, there had been surveillance, a conversation setting that up, as well as discussing previous dealings between himself and the informant. This was all recorded.

> This ultimately led to a search warrant on his place of business on the 21st . . . of July.

> He was there, advised [of] his rights under Miranda, [and] agreed to speak to police. And from what he said and from what we otherwise knew, he was a pound-level source of supply. He had someone above him who was supplying perhaps multi pounds. He had a habitual relationship with Donald Vaughn in the previous case, as well as with his codefendant, Mr. Blevins. He admits in his own statement that he was assisted by his wife, who is now a codefendant, in running the family business, if you will, of selling methamphetamine. He admitted he was a pound-level dealer. And from his statements, it would appear that he was

responsible for something in the neighborhood of 14 kilos of methamphetamine, just based on what he said.

(Id. at 31-32.)

The court subsequently inquired as to whether the AUSA's summary of the evidence was consistent with Barrera-Cabello's understanding as to what the evidence would have been if the matter had gone forward to trial. The defendant responded in the affirmative. (Id. at 32.)

At the conclusion of the hearing, the court asked whether Barrera-Cabello was satisfied with his attorney's representation, and whether he had any questions regarding anything that had been said during the hearing. Barrera-Cabello indicated that he was satisfied with the services provided by his attorney, that he understood "everything" that had been discussed during the hearing, and that he was "certain" that he did not have any questions for the court. (Id. at 34-35.)

Prior to the sentencing hearing, a probation officer prepared a presentence investigation report. Consistent with the stipulation in the plea agreement, the probation officer determined that Barrera-Cabello should be held accountable for more than five but less than fifteen kilograms of methamphetamine and, thus, subject to a base offense level of 36. Additionally, the probation officer determined that Barrera-Cabello was subject to a two-level enhancement for possession of a firearm and a three-level reduction for acceptance of responsibility, resulting in a total offense level of 35. When combined with a criminal history category of I, Barrera-Cabello's total offense level gave rise to a range of imprisonment of 168 to 210 months under the advisory Sentencing Guidelines.

The court conducted the defendant's sentencing hearing on May 24, 2011. At the start of the hearing, Barrera-Cabello confirmed that he had received the opportunity to review the presentence investigation report to his satisfaction. (Sentencing Tr. at 3.) Cargill advised the

court that the defendant had no objections to the factual findings made in the report or the probation officer's proposed application of the Sentencing Guidelines. Consequently, the court adopted the report, finding that Barrera-Cabello's total offense level and criminal history category gave rise to a recommended term of imprisonment of 168 to 210 months.

The court gave both sides the opportunity to offer any argument as to an appropriate disposition. In accordance with the plea agreement, the parties asked the court to impose a term of imprisonment at the low end of the Guidelines range. (Id. at 6-7.) When asked if it was possible that the defendant might receive a substantial assistance motion at a later date, the AUSA stated that the possibility was "not foreclosed," but that it was "not something that [was] as likely as in other cases." (Id. at 6.) Cargill agreed with the AUSA, emphasizing that a substantial assistance motion was not "something [they could] count on, but [they could] hope for." (Id. at 9.) After considering the factors set forth in 18 U.S.C. § 3553(a), the court ultimately determined that the parties' recommendation was appropriate. Accordingly, the court imposed a term of imprisonment of 168 months.

At the conclusion of the sentencing hearing, the court informed the defendant as follows:

> Mr. Barrera, I tell you, you have waived the right to appeal the sentence imposed in your case, and that waiver is binding unless the sentence exceeds the statutory maximum or is based on some constitutionally impermissible factor. If you undertake to appeal despite your waiver, you may lose the benefits of your plea agreement.

> To the extent there is some right of appeal . . . that remains, I tell you that a person who is unable to pay the cost of appeal may apply for leave to appeal without prepayment of that cost. Any notice of appeal must be filed within 14 days of entry of the judgment or within 14 days of a notice of appeal filed by the United States. If requested, the clerk of court will prepare and file a notice of appeal on your behalf.

(Id. at 18-19.)

6

The judgment was entered on May 27, 2011. Barrera-Cabello did not file a direct appeal of his conviction of sentence.

On May 22, 2012, Barrera-Cabello executed the instant motion to vacate under 28 U.S.C. § 2255. The motion asserts several claims of ineffective assistance of counsel, including a claim that Cargill was ineffective in failing to file a direct appeal. Upon reviewing the defendant's motion and the government's motion to dismiss, the court concluded that this particular claim could not be resolved on the existing record. Accordingly, the court took the government's motion under advisement and ordered an evidentiary hearing on Barrera-Cabello's claim of ineffective assistance for failure to file a direct appeal. The matter was referred to Judge Crigler, pursuant to 28 U.S.C. § 636(b)(1)(B), for the conduct of the hearing and for a recommended disposition of this claim.

Judge Crigler conducted an evidentiary hearing on January 30, 2013, during which Barrera-Cabello and Cargill were called as witnesses. Thereafter, Judge Crigler issued a report and recommendation, which includes the following findings:

1) Petitioner did not unequivocally request that counsel file a notice of appeal.

2) Petitioner's counsel was justified in believing that no rational defendant in petitioner's situation would want to appeal, and that this defendant in particular had not reasonably demonstrated an interest in appealing.

3) The petitioner, in fact, did not demonstrate a desire to appeal and became dissatisfied with his sentence only when he learned that no motion for reduction would be filed, which was well after the time for appeal had lapsed.

(Report and Recommendation at 10.) Based on these findings, Judge Crigler recommended that the court deny Barrera-Cabello's claim of ineffective assistance for failure to file a direct appeal. (Id. at 11.)

Barrera-Cabello subsequently filed an objection to the magistrate judge's report. In his objection, the defendant contends that he was "lulled into not demanding his right to a timely appeal," because "he relied upon what he perceived as Mr. Cargill's representation that a sentence reduction would occur within one year." (Obj. at 1.) The defendant argues that he would have requested an appeal, "had Mr. Cargill explained the sentence reduction was entirely up to the discretion of the government." (Id.)

## Standard of Review

The magistrate judge makes only a recommendation to this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The magistrate judge's report has no presumptive weight, and the responsibility to make a final determination remains with this court. Id. at 270-71. The court is charged with making a de novo determination of those portions of the report and recommendation to which specific objections are made. 28 U.S.C. § 636(b)(1). The court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."

## Discussion

### I.    Failure to File an Appeal

The court will first address Barrera-Cabello's claim that Cargill was ineffective in failing to file a direct appeal. In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court held that criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance. Id. at 687. To prevail on a claim of ineffective assistance, a

defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness, Id. at 688; and (2) that counsel's deficient performance prejudiced the defendant, Id. at 694.

In Roe v. Flores-Ortega, 528 U.S. 470 (2000), the United States Supreme Court recognized two scenarios in which a defendant may raise a claim of ineffective assistance for failure to file a notice of appeal. The first occurs when an attorney "disregards specific instructions from the defendant to file a notice of appeal." Id. at 477. Where such a claim is established, the attorney's assistance is per se ineffective. Id. at 483. The second scenario occurs when counsel fails to consult with a defendant about an appeal and there was a "constitutionally-imposed duty" to do so. Id. at 480. Such duty arises "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480.

Having reviewed the record in this case, the court adopts the magistrate judge's finding that Barrera-Cabello did not specifically instruct Cargill to file an appeal and, thus, that the first scenario of Flores-Ortega does not exist in this case. During the evidentiary hearing,[2] Cargill unequivocally testified that the defendant never instructed him to file an appeal, either in person, by telephone, or in writing. Consistent with Cargill's testimony, Barrera-Cabello acknowledged that he did not ask Cargill to file an appeal following the sentencing hearing, and that he did not consider pursuing an appeal until well after the appeal period expired. Based on the testimony

_____

[2] The court has reviewed the rough transcript from the hearing.

9

presented at the hearing, the court finds that Barrera-Cabello did not ask Cargill to file an appeal and, thus, that Cargill's failure to file an appeal was not per se ineffective.

Having concluded that Barrera-Cabello did not specifically request an appeal, the court must determine whether he has established that Cargill was constitutionally ineffective for failing to consult with him about an appeal.[3]  In this case, the record supports the magistrate judge's finding that Barrera-Cabello gave no indication that he had any interest in appealing. Consequently, the court "must determine, under the Flores-Ortega analysis, whether the circumstances would reasonably have led counsel to conclude that 'a rational defendant would want to appeal,' thus prompting counsel's duty to consult." United States v. Cooper, 617 F.3d 307, 313 (4th Cir. 2010) (quoting Flores-Ortega, 528 U.S. at 480).  In making this determination, the court "must take into account all the information counsel knew or should have known." Flores-Ortega, 528 U.S. at 480.  In cases where a defendant's conviction followed a plea of guilty, "the court must consider such factors as whether the defendant received the sentence he bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." Id.

Applying these principles, the court concludes that Cargill was justified in believing that a rational defendant in Barrera-Cabello's circumstances would not want to appeal.  First, as part of his plea agreement with the government, Barrera-Cabello "knowingly and voluntarily waiv[ed] any right to appeal," and agreed that he would "not file a notice of appeal." (Plea Ag. at 7.)  When questioned about the waiver during the Rule 11 hearing, Barrera-Cabello testified,

---

[3] During the evidentiary hearing, the defendant testified that he and Cargill had no further discussion about an appeal following the sentencing hearing.

under oath, that he aware of the provision, and that he had, in fact, agreed to waive his appellate remedies. (Plea Hearing Tr. at 12.)

Second, Barrera-Cabello received the sentence he bargained for with the government, and no nonfrivolous grounds for appeal remained that would have put Cargill on notice that a reasonable defendant would have wanted to appeal. See Cooper, 617 F.3d at 313 (citing Flores-Ortega, 528 U.S. at 479-80). Under the terms of the plea agreement, Barrera-Cabello stipulated to a base offense level of 36, he acknowledged that other sections of the Guidelines might apply, he agreed not to seek a term of imprisonment outside of the applicable Guidelines range, and the government agreed to recommend a sentence at the low end of the applicable Guidelines range. Applying the base offense level agreed upon by the defendant, a two-level firearm enhancement, and a three-level reduction for acceptance of responsibility, the court determined that the defendant was subject to a range of imprisonment of 168 to 210 months under the advisory Guidelines. Consistent with the plea agreement, the parties requested a term of imprisonment of 168 months, and the court ultimately determined that a 168-month term was appropriate. Thus, as both Barrera-Cabello and Cargill confirmed during the evidentiary hearing, the defendant's sentence fell squarely within the terms of the plea agreement that the defendant reached with the government. Additionally, the sentence imposed by the court was not in excess of the statutory maximum penalty or based on a constitutionally impermissible factor, so as to bring an appeal of the sentence outside the scope of the waiver. See United States v. Marin, 961 F.3d 493, 496 (4th Cir. 1992) ("[A] defendant could not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race.").

Third, counsel could have reasonably believed that Barrera-Cabello was adequately advised regarding his appellate rights. As set forth above, the court explicitly advised the defendant at the conclusion of the sentencing hearing that he had waived his right to appeal, but that there were limited circumstances that would not be barred by the waiver. The court further advised him of the time period for filing an appeal, and of the fact that the clerk would file a notice of appeal for him if he so desired.

In his sole objection to the report and recommendation, Barrera-Cabello argues that he was "lulled into not demanding his right to a timely appeal," because Cargill assured him that he would receive a sentence reduction within one year.[4] (Obj. at 1.) This argument, however, is belied by the record. In his plea agreement, Barrera-Cabello expressly acknowledged that the government was under no obligation to make a substantial assistance motion under Rule 35(b) and that he had "not been promised anything." (Plea Ag. at 4.) Likewise, during the Rule 11 hearing, Barrera-Cabello confirmed under oath that no one had made any promises other than the terms of the plea agreement, and that he understood that the government was under no obligation to file a substantial assistance motion. (Plea Hearing Tr. at 17.) At the conclusion of the sentencing hearing, the court inquired about the possibility of a substantial assistance motion. The AUSA advised the court that a substantial assistance motion was not as likely as in other cases, and Cargill agreed that the defendant could not count on receiving such motion. On this record, the court is convinced that Barrera-Cabello's assertion that he was promised a substantial

---

[4] Rule 35(b) of the Federal Rules of Criminal Procedure permits the court, "[u]pon the government's motion made within one year of sentencing, [to] reduce a sentence if the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person." Fed. R. Crim. P. 35(b)(1).

assistance motion is "palpably incredible and patently frivolous or false," and must be rejected. United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005) (internal citation and quotation marks omitted); see also Fields v. Atty. Gen. of Md., 956 F.2d 1290, 1299 (4th Cir. 1992) ("Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy.") (citing Blackledge v. Allison, 431 U.S. 63, 74-75 (1977)).

For the reasons outlined above, the court is of the opinion that it was not outside the wide range of professionally competent representation for Cargill not to have consulted with the defendant further about an appeal. As the United States Court of Appeals for the Fourth Circuit explained in United States v. Cooper, "where counsel consults with a client and establishes expectations about the consequences that are likely to follow from a guilty plea, it is 'difficult to say that counsel is professionally unreasonable, as a constitutional matter, in not consulting with such a defendant regarding an appeal,' if (1) those expectations are met, (2) the defendant does not express any interest in appealing, and (3) counsel concludes that there are no nonfrivolous grounds for appeal." Cooper, 617 F.3d at 314 (citing Flores-Ortega, 528 U.S. at 479). These are precisely the circumstances that existed in the defendant's case. Accordingly, the court concludes that Cargill's representation of Barrera-Cabello was not constitutionally deficient under Strickland and Flores-Ortega.[5] The court will adopt the magistrate judge's report and recommendation as to this claim and overrule the defendant's objection.

---

[5] Having concluded that counsel's performance was not deficient under Strickland and Flores-Ortega, the court need not consider the prejudice prong of the Strickland test.

## II.    Remaining Claims of Ineffective Assistance

Barrera-Cabello's § 2255 motion includes several additional claims of ineffective assistance. For the following reasons, the court concludes that each of these claims is without merit.

In the first remaining count, Barrera-Cabello claims that Cargill failed to "investigate the discovery." (§ 2255 Mot. at 5; Br. in Supp. at 3.) However, Barrera-Cabello's submissions provide no indication as to what counsel might have discovered had he investigated further, or how additional evidence would have led the defendant to insist on going to trial, rather than pleading guilty. Consequently, Barrera-Cabello is unable to show that he was prejudiced by counsel's alleged failure to properly investigate the case, and this claim is subject to dismissal. See Hill v. Lockhart, 474 U.S. 52, 59 (1985) ("Where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.").

Barrera-Cabello next claims that counsel was ineffective in failing to have an interpreter present during "plea negotiations." (§ 2255 Mot. at 5; Br. in Supp. at 5.) He appears to suggest that the absence of an interpreter during meetings with Cargill prohibited him from understanding the elements of the conspiracy offense to which he pled guilty and the terms of the plea agreement. The court agrees with the government that this claim is belied by the record. During the Rule 11 hearing, at which he was provided an interpreter, Barrera-Cabello expressly

stated, under oath, that he understood the elements of the conspiracy offense, the applicable penalties, and the pertinent provisions of the plea agreement that he reached with the government. (Plea Hearing Tr. at 8-11.) Before entering his plea of guilty, Barrera-Cabello was asked whether there was anything that he did not understand. In response, the defendant indicated that he understood "everything," and that he did not have any questions. (Id. at 35.) Barrera-Cabello has not offered any evidence that would undermine his sworn statements at the Rule 11 hearing. Consequently, his current allegations to the contrary must be rejected. See Lemaster, 403 F.3d at 221-22; Fields, 956 F.2d at 1299.

Barrera-Cabello also complains about his attorney's performance at the sentencing hearing. He appears to suggest that counsel should have objected to the application of the firearm enhancement, and requested a lower sentence on the basis that the defendant was a "first time offender." (§ 2255 Mot. at 7; Br. in Supp. at 7.) Both arguments, however, are without merit.

Under § 2D1.1(b)(1) of the Sentencing Guidelines, a two-level enhancement is authorized if a defendant possessed a firearm during the offense. Application Note 3 to § 2D1.1 explains that the enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." In order to prove that a firearm was present, "the [g]overnment need show only that the weapon was possessed during the relevant illegal drug activity." United States v. McAllister, 272 F.3d 228, 234 (4th Cir. 2001).

In this case, Barrera-Cabello's co-defendant, Timothy Blevins, advised investigators that he purchased methamphetamine from the defendant at the defendant's residence, that the defendant kept a pistol grip shotgun above a door at the residence, and that he observed the

shotgun on numerous occasions when purchasing methamphetamine from the defendant. The court remains convinced that such evidence provided a sufficient predicate for the application of the two-level enhancement under § 2D1.1. See, e.g., United States v. King, 333 F. App'x 92, 96 (7th Cir. 2009) (affirming the application of a firearm enhancement where a "gun was found hanging from a light fixture at the top of the basement stairwell, from where it was accessible to defend the methamphetamine operations in the garage"). Accordingly, Barrera-Cabello is unable to establish that counsel was ineffective in failing to object to the application of the enhancement. See Moore v. United States, 934 F. Supp. 724, 731 (E.D. Va. 1996) ("Failure to raise a meritless argument can never amount to ineffective assistance.").

The court must also reject Barrera-Cabello's claim that counsel was ineffective in failing to request a variance from the applicable Guidelines range on the basis that he was a first time offender.[6] As part of his plea agreement with the government, the defendant specifically stipulated that he would not seek a sentence outside of the applicable Guidelines range. Consequently, if counsel had requested a variance, the request would have violated this express term of the plea agreement, and the defendant would have risked losing the benefits of the agreement. For these reasons, Barrera-Cabello is unable to establish that counsel's performance was deficient in this regard or that it prejudiced his defense.

In his final claim, Barrera-Cabello asserts that counsel failed to ensure that the defendant had a proper "understanding [of the] conditions of the plea agreement." (§ 2255 Mot. at 8, Br. in Supp. at 10.) Once again, however, the defendant's claim of ineffective assistance is belied by

---

[6] The defendant had a prior conviction for trespassing for which he received zero criminal history points. With no other countable offenses, the defendant was found to have a criminal history category of I.

his own sworn testimony at the Rule 11 hearing. His conclusory allegations fall short of presenting the "clear and convincing evidence" needed to overcome the barrier created by his contrary testimony. Fields, 956 F.2d at 1299. Indeed, Barrera-Cabello has presented "no evidence that suggests his representations during his plea were untruthful or involuntary, and he is therefore rightly bound by his sworn statements." Id. As such, Barrera-Cabello has failed to show that the representation he received was deficient or that it prejudiced his defense.

## Conclusion

For the reasons stated, the court will adopt the magistrate judge's report and recommendation, overrule the defendant's objection to the report, and grant the government's motion to dismiss the defendant's § 2255 motion. Additionally, because Barrera-Cabello has failed to demonstrate "a substantial showing of the denial of a constitutional right," the court will deny a certificate of appealability. See 28 U.S.C. § 2253(c).

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the defendant and all counsel of record.

ENTER: This 16th day of April, 2013.

_____
Chief United States District Judge